UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-11490-RWZ

JOSEPH CLARK

v.

HAROLD CLARKE, *et al*


MEMORANDUM OF DECISION

March 18, 2013

ZOBEL, D.J.

Plaintiff Joseph Clark ("Clark") is a prisoner at the Massachusetts Correctional

Institute - Cedar Junction ("MCI-Cedar Junction"). Between November 2004 and

January 2011, Clark was placed on extra restraint status, which generally required him

to wear leg irons and a waist chain whenever he left his cell. Clark now sues several

correctional officers at MCI-Cedar Junction and their superiors (collectively,

"defendants"). He claims the extended use of these restraints deprived him of all

meaningful exercise, and so violated the Eighth Amendment, procedural due process,

and substantive due process. Defendants move to dismiss.

**I. Background**[1]

Clark was convicted in 1988 and sentenced to between twelve and thirty years

of incarceration. He has been incarcerated at MCI-Cedar Junction since 1992. In

---

[1] As appropriate on a motion to dismiss, the facts here are given as alleged in the complaint.
See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 4 (1st Cir. 2011).

October 1997, Clark was moved to MCI-Cedar Junction's Department Disciplinary Unit ("DDU"), a more restrictive section of the prison that houses inmates who have committed serious disciplinary violations.[2] Clark has remained on DDU status since that time, though he was twice temporarily housed in other parts of the prison.

In November 2004, Clark was involved in a physical altercation with two correctional officers that resulted in further criminal charges against him. Following this incident, Clark was placed on extra protection status and extra restraint status. Extra protection status required that Clark be accompanied by four correctional officers whenever he left his cell. Extra restraint status required that he be restrained by leg irons and a waist chain whenever he left his cell, including during his exercise period. The leg irons in question consisted of two ankle cuffs connected by a chain. The waist chain consisted of a chain around Clark's waist, linked to a cuff on each wrist, which kept his hands secured close to his waist.

As a DDU inmate, Clark was normally provided with one hour of outdoor exercise per day for five days each week. DDU inmates exercise in large outdoor cages, each about thirty to forty feet long and six feet wide, with one inmate at a time in each cage. Under extra restraint status, Clark was required to wear his leg irons and waist chain during his exercise period. The leg irons prevented him from jogging or running in his cage, and caused him numerous cuts and abrasions on his ankles and heels. Clark also worried that other inmates would break through the exercise cage to attack him and that he would be unable to respond because of the restraints. The

---

[2] For a general description of DDU conditions, see Torres v. Comm'r of Correction, 695 N.E.2d 200, 202-03 (Mass. 1998).

2

restraints furthermore prevented Clark from adding or removing layers of clothing to adjust to the outside temperature. In cold weather, Clark's hands were exposed, and he was afraid of slipping on ice in the exercise cage and being unable to break his fall. In warm weather, Clark was unable to swat mosquitos in the cage and he worried about insect-borne diseases.

Clark alleges that his condition was exacerbated by the correctional officers supervising him. He claims they taunted and harassed him by encouraging him to walk faster and cut his ankles more, and by expressing the hope that another inmate would break into Clark's cage and attack him. He also claims the officers told him he would be on extra restraint status for the rest of his DDU sentence.

After each exercise period, Clark was returned to his twelve-by-seven foot cell. He was not kept in leg irons and a waist chain while in his cell; however, the space there was not large enough for him to reasonably exercise.

Clark was kept on full extra restraint status from November 2004 until June 2009, except for ten days in 2005. From June 2009 until January 2011, although Clark remained on extra restraint status, his situation improved slightly; his leg irons were removed during his exercise period, leaving only his waist chain. In January 2011, however, Clark was involved in another prison incident. The disciplinary charges against him were dismissed as not supported by the evidence, but he was nevertheless placed back on full restraints. He was eventually removed from extra restraint status in January 2012, about five months after filing this lawsuit. In total, Clark spent over seven years on extra restraint status; for five and a half of those years, he was restrained by

both leg irons and a waist chain during all of his outdoor exercise.

Massachusetts prison regulations provide that restraints shall be used only when necessary, and that the prison superintendent or his designee shall review the status of any inmate on extra restraints every three days. Clark alleges that prison officials did not review his extra restraint status every three days, that he was never given notice of any review or any opportunity to contest his status, and that he was never given reasons for his continued extra restraint status.

Clark challenged his extra restraint status regularly, both through the prison grievance process and by letters to specific prison officials. Although he did receive some responses, none provided relief or identified the specific reasons for his continued extra restraint status.

Clark filed this lawsuit in August 2011, alleging that the extra restraint status and the procedure by which it was imposed violated his rights under the federal Constitution and the Massachusetts Declaration of Rights. Defendants now move to dismiss his complaint.

## II.  Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must be dismissed if it fails to state a plausible claim upon which relief can be granted. Id.

## III.  Analysis

Clark claims that defendants violated his rights under the federal Constitution and the Massachusetts Declaration of Rights in three ways: by subjecting him to cruel and unusual punishment, by depriving him of procedural due process, and by depriving him of substantive due process. Defendants deny that they violated Clark's rights; they also raise other defenses.

### A. Cruel and Unusual Punishment

Clark must meet two requirements to show he suffered cruel and unusual punishment violating the Eighth Amendment. First, he must allege facts showing that he suffered an objectively serious harm or deprivation. Second, he must allege facts showing that the prison officials responsible for that deprivation acted with deliberate indifference to his suffering. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

### 1. Serious Deprivation

Clark alleges that he suffered an objectively serious deprivation because he was denied meaningful exercise for seven years. The parties agree that exercise is a basic human need, and that a total or near-total deprivation of exercise can qualify as objectively serious. See Giacalone v. Dubois, 121 F.3d 695 (1st Cir. 1997) (unpublished); Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996); Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979); cf. Wilson v. Seiter, 501 U.S. 294, 304 (1991) (conditions of confinement may violate the Eighth Amendment when they produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise").

Defendants argue, however, that Clark was not completely deprived of exercise.

They point out that Clark could still move around while in leg irons and a waist chain, so he could at least exercise by walking (or perhaps shuffling) during his one-hour outdoor exercise periods. Defendants also hypothesize that Clark could exercise freely in his twelve-by-seven foot cell, where he was not kept under full restraints. Finally, defendants argue that the restraints on Clark did not violate the Eighth Amendment because they were justified by legitimate safety needs.

Defendants cite several cases dismissing Eighth Amendment claims by prisoners who were restrained by leg irons and waist chains during their exercise periods. See, e.g., Dumpson v. McGinnis, 348 F. App'x 658, 659 (2d Cir. 2009); Dumpson v. Goord, No. 00-CV-6039-CJS, 2011 WL 4345760, at *6-8 (W.D.N.Y. Sept. 15, 2011); Dabney v. McGinnis, No. 2006 WL 1285625, at *4-6 (W.D.N.Y. May 9, 2006). But this case differs in two important ways from the precedents that defendants cite. First, the duration of Clark's extra restraint status was substantially longer than in those cases. Clark wore a waist chain during his exercise period for more than seven years, and leg irons as well for five and a half of those years. That extended duration makes a real difference in the magnitude of the deprivation. See Williams v. Goord, 142 F. Supp. 2d 416, 425-27 (S.D.N.Y. 2001). Second, although Clark does not detail his disciplinary record in his complaint, his allegations indicate that he was relatively well-behaved while on extra restraint status. That distinguishes Clark's case from the vast majority of other cases approving extended restraints on exercise, in which the additional restraints were justified by continued misconduct. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993).

6

The facts alleged in the complaint raise a plausible claim that Clark was deprived of meaningful exercise for over seven years by being shackled during his exercise period, without any continued misconduct on his part to justify the additional restraints. Those allegations state an unjustified objective deprivation that is sufficiently serious to satisfy the first part of an Eighth Amendment claim.[3]

### 2. Deliberate Indifference

Defendants also argue that Clark has failed to satisfy the second part of his Eighth Amendment claim because he has failed to allege facts showing defendants were deliberately indifferent to his situation. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Defendants concede that Clark repeatedly complained to them about the restraints; however, they argue that none of his complaints outlined an excessive risk to his health or safety. But as discussed above, it is well established that exercise is a basic human need. Taking Clark's allegations as true, prison officials knew that he was being deprived of all meaningful exercise for more than seven years. The risk of harm from that deprivation is sufficiently obvious to support an inference of deliberate indifference. See Fogle v. Pierson, 435 F.3d 1252, 1260 (10th Cir. 2006) ("[W]e think it is clear that a factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping [plaintiff] in

---

[3] Defendants also argue that the cuts and abrasions on Clark's ankle from the leg irons are de minimis uses of force, and so outside the scope of the Eighth Amendment. Cf. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). That question requires further factual development.

administrative segregation.") Furthermore, Clark has alleged that certain prison guards expressed an affirmative hope he would be harmed, encouraging him to hurt his ankles and taunting him with the possibility that other inmates would attack him. Clark's allegations as a whole raise a plausible inference of deliberate indifference, and so satisfy the second part of an Eighth Amendment claim.

### 3. Qualified Immunity

Defendants argue that even if Clark has stated an Eighth Amendment claim, they are entitled to qualified immunity. The qualified immunity inquiry is a two-part test: "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). Regarding the second prong of the test, the "dispositive inquiry" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)). That determination looks to both the contours of the allegedly infringed right and the particular facts of the case. Id.

As discussed above, the facts alleged by Clark make out a violation of the Eighth Amendment. The remaining question is whether the right in question was clearly established. Defendants concede that an inmate's right to some exercise was clearly established before Clark was first placed on extra restraint status. But they argue no precedent clearly established that keeping Clark on extra restraint status for seven years would necessarily violate his right to exercise.

8

Defendants are correct that no previous case has considered whether it violates the Eighth Amendment to leave a prisoner in chains during his exercise period for over seven years. But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). At this point, taking all Clark's factual allegations as true and drawing all inferences in his favor, "a reasonable officer could not have believed that [it was] lawful" to leave Clark restrained during his exercise period for such an extended period of time.

That conclusion depends heavily on certain reasonable inferences from Clark's allegations. For instance, his allegations support the inference that it was impossible for him to do any meaningful exercise beyond a careful shuffle during exercise periods when he was fully restrained, and perhaps a brisk walk when he wore a waist chain but no leg irons. Clark's allegations likewise support the inference that it was impossible for him to do any meaningful exercise in his twelve-by-seven foot cell, since his cell also presumably includes a bed, toilet, sink, and perhaps other furniture. Further factual development may well show that Clark in fact had some opportunity for exercise available, so that a reasonable official could not know the extra restraint status violated Clark's Eighth Amendment rights. Further factual development could also show continued misconduct by Clark that a reasonable official might think justified the continued restrictions. But in the present posture, Clark has plausibly alleged a deprivation of exercise extreme enough and unjustified enough to defeat qualified immunity.

**B.  Procedural Due Process**

9

Clark also claims that he was denied the procedural due process guaranteed by the Fourteenth Amendment. Procedural due process protects individuals from being deprived of life, liberty, or property without constitutionally adequate procedures. <u>See</u> <u>Air Sunshine, Inc. v. Carl</u>, 663 F.3d 27, 34 (1st Cir. 2011). To state a violation of procedural due process, a plaintiff must (1) allege a liberty or property interest; and (2) allege that defendants deprived him of that interest without sufficient procedures. <u>Gonzalez-Droz v. Gonzalez-Colon</u>, 660 F.3d 1, 13 (1st Cir. 2011).

Clark alleges that he was deprived of a state-created liberty interest when he was physically restrained during his exercise periods.[4] Like other inmates, of course, Clark was already subject to a range of restrictions on his liberty that were justified by his conviction. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the state to impose."). Therefore, in order to show that his extra restraint status violated a liberty interest protected by due process, Clark must show that it constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).

Defendants argue that the use of restraints on Clark during his exercise period did not constitute an atypical and significant hardship. They cite to several cases in which other courts have held that prisoners did not have a liberty interest in being free from restraints during their exercise periods. But these cases only establish that the

---

[4] Defendants do not challenge Clark's argument that a state-created liberty interest arises from the Massachusetts prison regulations Clark cites. <u>See</u> 103 Mass. Code Regs. § 505.11; <u>see also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 222 (2005).

use of restraints for a period of weeks or months does not implicate a liberty interest.
See, e.g., Umondak v. Ginsel, 426 F. App'x 267, 268 (5th Cir. 2011) (twenty-five days);
Selby v. Martin, 84 F. App'x 496, 498 (6th Cir. 2003) (sixty-four days); cf. Skinner v.
Cunningham, 430 F.3d 483, 487 (1st Cir. 2005) (finding no liberty interest implicated by
a forty-day confinement in administrative segregation, given that "[the deprivation] was
rational, that its duration was not excessive, and that [its] central condition . . . was
essential to its purpose"). Here, on the other hand, Clark was placed in restraints
during his exercise period for over seven years. That duration makes a significant
difference. See Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998) ("duration of the
confinement" is "a critical factor"). On the facts alleged, Clark suffered an atypical and
significant hardship by being required to wear physical restraints during all of his
exercise periods for more than seven years, including leg irons and a waist chain for
five and a half years. The deprivation of exercise he alleges was a substantially more
severe punishment than the ordinary incidents of prison life,[5] and apparently was not
justified by continued misconduct. Given these allegations, Clark has identified a
protected liberty interest.

Defendants also argue that Clark was provided with all the process he was due
when he entered the DDU. But those previous procedures did not and could not allow
Clark to respond to the subsequent events that led to his extra restraint status. Clark
has alleged that he was never given notice of any review of his extra restraint status or

---

[5] The First Circuit has not yet decided whether the Sandin test looks to the ordinary incidents of
life in the general prison population, the specific population from which the prisoner was drawn (here, the
DDU), or some other population. See Skinner v. Cunningham, 430 F.3d 483, 486-87 (1st Cir. 2005). I
need not address that question here because Clark's allegations show an atypical and significant
hardship even by comparison with life in the DDU.

any opportunity to respond to its imposition or continuation. As such, he has stated a

lack of constitutionally adequate process. Cf. Wilkinson v. Austin, 545 U.S. 209, 224-30

(2005) (finding constitutionally adequate process where inmates received "notice of the

factual basis [for the deprivation] and a fair opportunity for rebuttal"); Hewitt v. Helms,

459 U.S. 460, 477 n.9 (1983) (holding that due process requires "some sort of periodic

review" of extended confinement in administrative segregation), abrogated on other

grounds by Sandin v. Conner, 515 U.S. 472 (1995).

Finally, defendants cursorily argue that they are protected by qualified immunity

because the law in this area was not clearly established. Of course, the general

principles underlying Clark's claim were clearly established: it was clear that Clark had

a liberty interest in avoiding atypical hardship in prison, and that defendants were

obliged to provide Clark with due process before depriving him of that liberty right. See

Sandin, 515 U.S. at 484; Wolff v. McDonell, 418 U.S. 539, 555-56 (1974). But the

qualified immunity inquiry is more precise. Qualified immunity asks whether reasonable

officers in the exact position defendants were in would have known that their conduct

was unlawful. See Maldonado, 568 F.3d at 269. The primary question is whether

reasonable officers would have known that they were depriving Clark of a protected

liberty interest by keeping him in restraints during his exercise period for over seven

years. There is again no case law available addressing this precise set of facts; neither

party cites any case in which a prisoner remained on extra restraint status for such a

long period. But as noted above, the law can be clearly established without a case

directly on point.  Hope, 536 U.S. at 741. On the facts presented, a reasonable officer

would have known that Clark's extra restraint status constituted an atypical hardship,

given that it allegedly deprived him of all meaningful exercise for seven years without

being justified by continued misconduct. Cf. Tellier v. Fields, 280 F.3d 69, 83-85 (2d

Cir. 2000) (finding it clearly established that confinement in administrative detention for

over 500 days implicated a liberty interest). The deprivation Clark alleges was

sufficiently extreme and sufficiently extended that a reasonable officer would have

realized it implicated a protected liberty interest even without directly analogous

precedent. Likewise, a reasonable officer would have known it violated Clark's right to

due process to deprive him of that liberty interest for seven years without any notice,

hearing, or meaningful review. See Wolff, 418 U.S. at 555-56; cf. Hewitt v. Helms, 459

U.S. at 477 n.9.

### C.  Substantive Due Process

Finally, Clark claims he was denied substantive due process because he was

kept on extra restraint status without any legitimate penological objective. That claim

fails as a matter of law. A substantive due process claim is not available when another

constitutional provision covers the misconduct alleged. See Pagan v. Calderon, 448

F.3d 16, 34 (1st Cir. 2006). "Where a particular Amendment 'provides an explicit textual

source of constitutional protection' against a particular sort of government behavior,

'that Amendment, not the more generalized notion of "substantive due process," must

be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994)

(plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989). That is true

whether or not the plaintiff actually states a claim under the other constitutional

provision. <u>Pagan</u>, 448 F.3d at 34. Here, the conduct of which Clark complains is covered by the Eighth Amendment's guarantee against cruel and unusual punishment; therefore, no substantive due process claim is available.

### D.  Statute of Limitations

Section 1983 borrows the forum state's statute of limitations for personal injury tort actions. <u>Rodriguez-Garcia v. Municipality of Caguas</u>, 354 F.3d 91, 96 (1st Cir. 2004). In Massachusetts, that sets a three-year statute of limitations for § 1983 claims. <u>See</u> Mass. Gen. Laws ch. 260, § 2A.

Defendants argue that because of the statute of limitations, Clark can only recover for violations occurring in the three years before he filed suit. Clark has been on extra restraint status since November 2004; but according to defendants, his claim should be limited to the period between August 19, 2008 and the day he filed suit on August 19, 2011.

Clark responds that he has alleged a continuing violation that brings the entire course of defendants' conduct within the statute of limitations. The continuing violation doctrine allows a plaintiff to seek damages for acts occurring outside the limitations period if those acts are part of an ongoing course of unlawful conduct that continued into the limitations period. <u>See</u> <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 730-31 (2001). It is most commonly invoked in employment discrimination cases; indeed, "[t]he classic example of a continuing violation is a hostile work environment." <u>Tobin v. Liberty Mut. Ins. Co.</u>, 553 F.3d 121, 130 (1st Cir. 2009). In such cases, the plaintiff states a claim by alleging a series of separate acts that collectively add up to unlawful

14

conduct even though each act might not be actionable on its own. Id. The plaintiff may

therefore include within his claim acts that occur outside the limitations period, since

the violation is caused by the entire course of the defendants' conduct. By contrast,

ongoing injuries that stem from a single unlawful act do not state a continuing violation.

Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v.

Juarbe-Jimenez, 659 F.3d 42, 51 (1st Cir. 2011).

Although the continuing violation doctrine is most commonly seen in the

employment context, it has also been applied to § 1983 cases like this one. See, e.g.,

Schonarth v. Robinson, Civil No. 06-CV-151-JM, 2008 WL 510193, at *6 (D.N.H. Feb.

22, 2008). In such situations, some courts have applied a tripartite framework,

considering: (1) whether the separate acts constituted the same type of conduct, (2)

whether the separate acts recurred frequently, and (3) whether the acts had a degree

of permanence triggering a plaintiff's duty to assert his rights. Id.; see also Foster v.

Morris, 208 F. App'x 174, 178 (3d Cir. 2006).

Here, the facts that Clark has alleged fall within the continuing violation doctrine.

Like a hostile environment claim, Clark's Eighth Amendment and procedural due

process claims depend on a series of separate acts—namely, his repeated

shacklings—that individually would not be actionable. It does not violate the Eighth

Amendment to deprive an inmate of meaningful exercise for one day, but it does violate

the Eighth Amendment to deprive him of meaningful exercise for over seven years.

Likewise, it does not violate procedural due process to afford an inmate no notice or

hearing before a brief deprivation, but it does violate procedural due process to afford

him no process and no meaningful review for a serious deprivation lasting over seven years. Because Clark's claims depend on the entire course of defendants' conduct, both before and during the limitations period, he has stated a continuing violation that obviates the statute of limitations here.

The same result follows from the tripartite framework cited in Schonarth and Foster. Defendants concede that their repeated acts of putting Clark in leg irons and a waist chain during his exercise period were always the same type of conduct, and that these acts occurred frequently. Those concessions satisfy the first two parts of the test. Defendants argue only that the conduct was sufficiently permanent that Clark should have known to assert his rights earlier, because Clark was kept in restraints so consistently that he should have realized the condition was practically permanent. That argument is unpersuasive. First, each act of shackling lasted for only an hour; as such, each individual act had no permanent effect beyond its small addition to Clark's cumulative deprivation of exercise. Second, it appears that defendants could have removed Clark from extra restraint status at any time, as witness the fact that for a year and a half they restrained him only by a waist chain. There is consequently nothing about extra restraint status itself that indicates permanence. In fact, the prison regulations Clark cites indicate that extra restraint status must be reviewed every three days, implying that it is generally expected to last only for a short time. Although Clark alleges several correctional officers told him he would be on extra restraint status permanently, his complaint makes clear those were only cruel taunts. On the facts alleged, the separate but repeated acts on which Clark's claims are based did not have

any degree of permanence that should prevent the continuing violation doctrine from applying.

### E.  Personal Involvement

Three defendants—Harold Clarke, Luis Spencer, and Gary Roden—move to dismiss the claims against them for failure to allege personal involvement.

In a § 1983 suit, "each Government official . . . is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. That is, an official cannot be held liable for his subordinates' actions on any theory of vicarious or supervisory liability. Id. A supervisor can, however, be held liable for "conduct that amounts to condonation or tacit authorization" of his subordinates' transgressions. Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005); see Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 768 (1st Cir. 2010). To establish liability, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007).

As to defendant Clarke, the complaint states only that he is the former Commissioner of Correction for the Massachusetts Department of Correction. It pleads no facts giving rise to a plausible inference that Clarke had actual or constructive notice of the alleged constitutional violations, or that he condoned or tacitly authorized them. Therefore, the complaint must be dismissed as to Clarke.

As to defendant Spencer, the current Commissioner of Correction, the complaint alleges that Clark sent him two letters in July 2011. Those letters informed Spencer of Clark's ongoing extra restraint status (which at that point had continued for nearly

seven years), and stated that other correctional officers had told Clark he would never be taken off extra restraint status. Clark alleges that he never received any response directly from Spencer, but that he received responses to those same letters from defendants Dale Bissonnette (the Director of the DDU at MCI-Cedar Junction) and Gary Roden (the Acting Assistant Deputy Commissioner for the Department of Correction). Given those facts, Clark has plausibly alleged that Spencer had actual or constructive notice of the constitutional violations alleged. Although Clark's allegations do not firmly establish that Spencer received and read Clark's letters, they are enough to plausibly show that Spencer knew or should have known about Clark's situation, especially since Spencer's subordinates responded to the letters Clark had sent. See Miranda-Marin, 610 F.3d at 768 (evidence that plaintiff sent defendant letters regarding alleged retaliatory transfer was sufficient to find that defendant had notice). Furthermore, Clark's allegations raise a plausible inference that Spencer condoned or tacitly authorized Clark's continued extra restraint status, if he instructed or allowed his subordinates to respond to Clark's letters and deny Clark any relief. Cf. id. at 768-69. These allegations are enough to state a claim against defendant Spencer.

The complaint's allegations are likewise sufficient as to defendant Roden. Clark alleges that Roden responded to his letters to Spencer, meaning that Roden had actual notice of the alleged constitutional violations. Furthermore, Clark alleges Roden wrote in that response that he had reviewed Clark's situation and had decided not to intervene. That decision not to intervene by definition constitutes condoning or tacitly authorizing the continuation of Clark's extra restraint status.  Clark has thus raised a

18

plausible inference that Roden was personally involved in the violation of Clark's constitutional rights.

### F. Official Capacity

Clark has sued all defendants in both their official and individual capacities. Defendants move to dismiss the claims for damages against defendants in their official capacities.

Section 1983 creates a cause of action against any "person" who violates another person's federal rights under color of state law. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). As such, Clark cannot state a § 1983 claim against defendants in their official capacities.

Clark attempts to avoid this conclusion by arguing that he has alleged a policy or practice of constitutional violations, citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). But Monell only allows claims against local governments, not state governments. See id. at 690-91. Clark's argument is therefore inapposite.


### G.  Declaratory Relief

Clark seeks declaratory relief under the Massachusetts declaratory judgment statute, Mass. Gen. Laws ch. 231A, for violations of the Massachusetts Declaration of Rights. But as defendants correctly note, because declaratory relief is only a procedural device, it is governed by federal law in federal court. See Hanna v. Plumer, 380 U.S. 460 (1965). Declaratory relief therefore would only be appropriate under the

federal declaratory judgment act, 28 U.S.C. § 2201 <u>et seq.</u> <u>See</u> <u>Tocci Bldg. Corp. of</u>

<u>N.J. v. Va. Sur. Co.</u>, 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010). Of course,

defendants give no reason why Clark cannot simply amend his complaint to seek relief

under the federal declaratory judgment act.

## IV.  Conclusion

Defendant's motion to dismiss (Docket # 38) is ALLOWED IN PART and

DENIED IN PART. Clark's substantive due process claim and his claims for damages

against defendants in their official capacities are DISMISSED, as are his claims for

declaratory relief under Mass. Gen. Laws ch. 231A.


    March 18, 2013                         /s/Rya W. Zobel

          DATE                                  RYA W. ZOBEL
                                       UNITED STATES DISTRICT JUDGE